UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL FITZPATRICK,

         Plaintiff,

   v.

BRIAN FITZPATRICK, ET AL.,

         Defendants.

No.  2:12-cv-2938 GEB AC PS

ORDER

On August 28, 2013, the court held a hearing on defendants' June 13, 2013 motion to dismiss the first amended complaint. Plaintiff appeared in pro per. Douglas Roeca appeared for defendants Brian and Dianne Fitzpatrick. On review of the motion, the briefs filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

FACTUAL ALLEGATIONS

A.    Allegations Included in First Amended Complaint

Though the first amended complaint is long and detailed, the essence of plaintiff's claim in this family dispute is that he invested and/or loaned money towards the purchase of land in El Dorado County and the construction of a winery and lodge (the Fitzpatrick Winery and Lodge) that his brother, defendant Brian Fitzpatrick, managed. Eventually the land was transferred to Brian, though plaintiff was repeatedly assured over the years by Brian that plaintiff's investments and/or loans would be repaid.

1

Plaintiff alleges that, beginning in 1974, he invested and loaned money in "a series of investments" that resulted in his purchase of land for the Fitzpatrick Winery and Lodge in El Dorado County, California.  First Am. Compl. ("FAC") 3-4, Ex. A.  Plaintiff was also the applicant and then licensed and bonded party for the winery, though Brian eventually came to hold the license in 1986.  FAC 4, 20.

Plaintiff's investments are detailed as follows:

- In 1981, plaintiff purchased the land on Fairplay Road that became the site of the Fitzpatrick Winery.
- Between 1978 and 1985, plaintiff invested and/or loaned approximately $100,000 in/for the winery.
- Between 1983 and 1986, plaintiff invested $150,000 in the preparation of the property for construction and the actual construction of the Fitzpatrick Lodge.
- In 1985, plaintiff sent a container of antique Irish pine furniture from Ireland for the furnishing of the Fitzpatrick Lodge.

FAC 15.

Plaintiff and Brian worked together closely on the Fitzpatrick Winery and Lodge.  Brian acted as plaintiff's agent in the initial purchase of land in El Dorado County.  FAC 3, 20, Ex. A.  Brian also operated as an officer/agent of California Connection Corporation, Inc., a legal entity established and owned by plaintiff for the purpose of advancing the Fitzpatrick Winery and Lodge.  Id. 3.

Plaintiff invested in the winery venture because he believed that he would eventually be repaid.  FAC 15.  Since this was a family relationship, "the accounting was weak," though plaintiff "was repeatedly assured by Defendants and other family members that 'in the end' a proper accounting would be made."  Id. 5.

In late 2011, plaintiff became aware through his mother that Brian and his wife, defendant

////

////

////

2

Dianne Fitzpatrick,[1] intended to sell the winery without informing plaintiff.[2] Brian apparently told his mother that "in exchange for her silence regarding the pending sale he, Brian Fitzpatrick, promised to 'settle' with Plaintiff for his large investment . . . ." FAC 6. The winery was eventually sold in either late 2011 or early 2012, though plaintiff has not yet been repaid for his investments and/or loans.

B.   Allegations Included in Opposition to Defendants' Motion to Dismiss[3]

In 1974, plaintiff purchased a rental property in Santa Barbara, California. Opp'n 5. He offered Brian a partnership in the property if he would manage it; Brian apparently agreed to this proposal. Opp'n 5. In 1978, at the insistence of plaintiff's father, the property was sold in furtherance of Brian's dream of moving to the country. Opp'n 5-6. A large portion of the sale was then used to purchase the property in El Dorado County, which plaintiff now contends was purchased by Brian. Id.

In 1978, Brian suggested to plaintiff that they form a partnership to operate a vineyard and winery. Opp'n 6. Plaintiff agreed and obtained a Bond/License from the Bureau of Alcohol, Tobacco and Firearms since Brian was ineligible. Id. Plaintiff also continued to invest money into the venture while contributing money to the development of the overall property. Id.

In 1980, plaintiff notified defendant and a third partner that he was unhappy with the accounting and the proposed profit distribution, and agreed to invest further sums only as a preference investment with interest accruing at a rate of 12% per annum. Opp'n 6. Plaintiff contends that Brian accepted substantial sums from plaintiff following this agreement. Id. Plaintiff further contends that these "loans or preferred investments were to be secured by wine inventory." Id. Loans made pursuant to this agreement were in excess of $100,000. Id.

---

[1] Although plaintiff refers to Brian and Dianne as "defendants," collectively, there are no specific allegations as to Dianne and plaintiff does not identify what her role was in running and/or selling the Fitzpatrick Winery and Lodge.

[2] The purchasing entity, Gold Mountain Winery, Inc., was initially named as a defendant in this action but was voluntarily dismissed with prejudice by plaintiff on July 19, 2013. See ECF Nos. 38, 40.

[3] Plaintiff asserts additional facts in the opposition, but they cannot be considered for the purpose of ruling on a Rule 12(b)(6) motion to dismiss. See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 (9th Cir. 1998).

1  In 1981, Brian located another site for the winery in Fairplay, California. Opp'n at 7.
2  Plaintiff purchased these forty acres in order to move the winery to a "superior site" and later
3  deeded a portion to Brian "in order to enable a future split of the property." Id. This site was
4  instead used to build a lodge. Id.

5  Between 1984 and 1986, plaintiff invested approximately $150,000 to build a lodge on the
6  property. Opp'n 7. Brian contributed labor and plaintiff paid him accordingly. Id. 8. These
7  contributions were in addition to making all payments on the property, including note payments
8  and property tax payments. Id. 7. In 1987, plaintiff had paid down $120,000 of about $200,000
9  owed to the seller of the property. Id. 8. Plaintiff points to a handwritten "accounting" to show
10 that his total contributions to the property on which the lodge was build was $254,000. Id.

11 After plaintiff got married in 1986, discussion was had regarding the sale of plaintiff's
12 interest to the defendants. Opp'n 9. It appears that this land was deeded to defendants in 1987,
13 but no accounting was made because Brian's "normal reaction . . . verg[ed] on, and sometimes
14 achiev[ed], physical violence." Id.

15 Around December 2011, defendants sold the Fitzpatrick Winery and Lodge to Gold
16 Mountain Winery. Opp'n 4. Brian contacted plaintiff in January 2012 to inform him of the sale,
17 but has since refused to enter mediation or arbitration to establish an equitable apportionment of
18 the proceeds. Id. 4-5.

19                      PROCEDURAL BACKGROUND
20 A.    The Original Complaint
21 On December 5, 2012, plaintiff initiated suit against defendants Brian and Dianne
22 Fitzpatrick and Gold Mountain Winery. Plaintiff generally alleged "a violation of a long-standing
23 relationship based on trust and cooperation" by Brian and Dianne. Compl. 2. He alleged: (1)
24 breach of an implied contract; (2) breach of the implied covenant of good faith and fair dealing;
25 (3) breach of fiduciary duty; (4) fraud; (5) theft by deception; (6) constructive trust; (7) unjust
26 enrichment; and (8) that Gold Mountain Winery conspired with defendants to defraud him.
27 Compl. 3-4, 7-9, 11, 23-24.
28 On February 27, 2013, Brian and Dianne Fitzpatrick moved to dismiss for failure to state a

1  claim, or, alternatively, for a more definite statement.  Gold Mountain Winery filed a joinder on
2  March 6, 2013.  On March 15, 2013, despite joining the previous motion, Gold Mountain Winery
3  filed a separate motion to dismiss for failure to state a claim.
4         On May 7, 2013, the undersigned granted the joint motion to dismiss and Gold Mountain
5  Winery's separate motion because the complaint lacked specificity.  ECF No. 23.  Plaintiff was
6  granted thirty days to file an amended complaint.
7  B.      The First Amended Complaint
8         Plaintiff filed an amended complaint on May 28, 2013, and a modified first amended
9  complaint on June 4, 2013.[4]  He reasserts his original claims: (1) fraud; (2) conspiracy; (3) breach
10 of fiduciary duty; (3) constructive trust; (4) theft by deception; (5) breach of implied contract; (6)
11 breach of implied covenant of good faith and fair dealing; and (7) unjust enrichment.
12        On June 5, 2013, Gold Mountain Winery filed a motion to dismiss for failure to state a
13 claim.  Subsequently, on request of the plaintiff, the court dismissed Gold Mountain Winery with
14 prejudice and accordingly denied its motion as moot.[5]  ECF No. 40.
15        On June 13, 2013, Brian and Dianne Fitzpatrick also filed a motion to dismiss for failure
16 to state a claim, or, alternatively, for a more definite statement.  Plaintiff opposes this motion.
17        Plaintiff has also filed a motion for leave to file a supplemental pleading.  ECF No. 41.
18                                    LEGAL STANDARDS
19        The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure
20 12(b)(6) is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n,
21 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal
22 theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v.
23 Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The plaintiff must allege "enough facts
24 to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly,
25 550 U.S. 544, 555 (2007).  In deciding a 12(b)(6) motion to dismiss, the court accepts the

---

[4] It appears a second copy of the first amended complaint was filed to include a page that was omitted from the first filing.  The pleadings are otherwise identical.
[5] Because Gold Mountain Winery has been dismissed from this action, so too are plaintiff's allegations against it.

5

allegations in the complaint as true, and it construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

## DISCUSSION

A.   Defendants' Motion to Dismiss

Brian and Dianne Fitzpatrick move to dismiss for plaintiff's failure to state a claim on which relief can be granted. Alternatively, they ask for a more definite statement. Defendants argue that plaintiff has not properly cured the vagueness of his last complaint. While plaintiff counters that his complaint is sufficient, he also asserts additional facts in his opposition.

1.   Fraud

The court construes plaintiff's fraud claim as one of fraudulent deceit because plaintiff accuses the defendants of making promises that they never intended to perform, specifically promises to repay plaintiff for his investments and/or loans.

Under California Civil Code section 1709, one is liable for fraudulent deceit if he "deceives another with intent to induce him to alter his position to his injury or risk. . . ." Cal. Civ. Code, § 1709. Section 1710 of the Civil Code defines deceit for the purposes of Civil Code section 1709 as, inter alia, "[a] promise, made without any intention of performing it." Cal. Civ. Code § 1710. "'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citation.]" Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). Each element must be alleged with particularity. Conrad v. Bank of America, 45 Cal. App. 4th 133, 156 (1996).

Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead with particularity, a requirement which "applies to state-law causes of action." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). Fraud claims stating mere conclusory allegations are not sufficient. Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989). Fraud claims must state "the who, what, when, where, and how" of the misconduct alleged, and

allegations "must set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1103.  The pleading must identify the circumstances constituting fraud so that defendants might have notice of the particular misconduct alleged, allowing preparation of "an adequate answer from the allegations." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).

Defendants argue that plaintiff fails to meet Rule 9's particularity requirement because plaintiff has not adequately pled "the who, what, when, where and how" of his fraud claim. Specifically, they assert that plaintiff failed to (1) specify who made the statements; (2) specify when the statement were made (except "over the years."); (3) specify what was said (except promises to comply with accounting and business standards); (4) specify what the underlying promises were; and (5) explain why there was such a gap between the last investment in 1986 and the filing of the complaint in 2012.  They also assert that plaintiff has not adequately pled that defendants intended not to perform their promise.

Turning to the first element of a fraud claim, misrepresentation, "[a] promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." Lazar, 12 Cal. 4th at 638 (citation omitted).  Thus, in a promissory fraud action, to sufficiently allege defendant made a misrepresentation, the complaint must allege that (1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false. Id. at 639.

To sufficiently plead the first requirement, that the defendant made a promise, the complaint must state "facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" Lazar, 12 Cal. 4th at 645 (citation omitted).  As for the second requirement, the falsity of that promise is sufficiently pled with a general allegation the promise was made without an intention of performance. See Tyco Industries, Inc. v. Superior Court, 164 Cal. App. 3d 148, 156 (1985).  "The representation (implied) is that of the intention to perform. . . .; the truth is the lack of that intention. Purely evidentiary matters—usually circumstantial evidence or admissions showing lack of that intention—should not be pleaded. Hence, the only

necessary averment is the general statement that the promise was made without the intention to perform it, or that the defendant did not intend to perform it." 5 Witkin, Cal. Pro. (5th ed. 2008) Pleading § 725, p. 142 (citation omitted).

Plaintiff alleges here that "numerous promises" were made "over the years" by defendants that they would treat his "investments and loans . . . in accordance with applicable standards of accounting and business ethics." Plaintiff also alleges that the promises were "a misrepresentation of the actual intent of the Defendants." While the court finds that plaintiff has adequately pled that defendants did not intend to perform their promise, plaintiff has again failed to specifically allege "*facts* which [would] 'show how, when, where, to whom, and by what means the representations were tendered.'" Lazar, 12 Cal. 4th at 645 (emphasis in original) (citation omitted). It is unclear, for example, whether both or only one of the defendants made promises to plaintiff, whether the promises were made in writing or orally, and, most importantly, what exactly was promised. Stated plainly, plaintiff must assert specific facts identifying *who* made *what* promises, *when* they made them, and *how* they made them. Although plaintiff has alleged additional facts in his opposition, the court cannot consider those in ruling on the instant motion to dismiss. Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 (9th Cir. 1998). Therefore, plaintiff's fraud claim fails.

       2.       <u>Breach of Fiduciary Duty</u>

Plaintiff next asserts that defendants violated their fiduciary duty to him. In the alternative, plaintiff alleges the existence of a confidential relationship. Defendants seek dismissal of this claim.

> '[F]iduciary' and 'confidential' have been used synonymously to describe . . . any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he [or she] voluntarily accepts or assumes to accept the confidence, can take no advantage from his [or her] acts relating to the interest of the other party without the latter's knowledge or consent. . . .

<u>Richelle L. v. Roman Catholic Archbishop</u>, 106 Cal. App. 4th 257, 270-71 (2003) (internal

citations and quotations omitted).  Technically, a "fiduciary relationship" is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client, see Frankel, Fiduciary Law 71 Cal. L. Rev. 795 (1983), whereas a "confidential relationship" may be founded on a moral, social, domestic, or merely personal relationship as well as on a legal relationship.  See Stevens v. Marco, 147 Cal. App. 2d 357, 374 (1956); Bolander v. Thompson, 57 Cal. App. 2d 444, 447 (1943); Robbins v. Law, 48 Cal. App. 555, 561 (1920).  The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party. Richelle L., 106 Cal. App. 4th at 271 (citation omitted).

As the California Supreme Court has stated, "'[a] confidential relation may exist although there is no fiduciary relation . . . .'"  Vai v. Bank of America, 56 Cal. 2d 329, 337-38 (1961) (quoting Rest.2d Trusts, § 2, com. b, p. 6).  Unlike confidential relations, fiduciary relations arise out of certain canonical relationships that are legally defined and regulated.  Richelle L., 106 Cal. App. 4th at 271 (citation omitted).  Because confidential relations do not fall into well-defined categories of law and depend heavily on the circumstances, they are more difficult to identify than fiduciary relations.  Id.

      a.      Fiduciary Relationship

Breach of fiduciary duty is established with: (1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) resulting damage.  Pellegrini v. Weiss, 165 Cal. App. 4th 515, 524 (2008).  A fiduciary relationship exists when one of the parties has a duty to act with the utmost good faith for the benefit of the other party, Gilman v. Dalby, 176 Cal. App. 4th 606 614 (2009), but an ordinary breach of contract is not "a breach of fiduciary duty based solely on the breach of the implied covenant of good faith and fair dealing contained in every contract."  Id.; Jhaveri v. ADT Sec. Servs., Inc., 2012 WL 843315, at *4 (C.D. Cal. Mar. 6, 2012) (finding that under California law a fiduciary relationship is established through a contractual relationship only by conduct or circumstances that elevate the parties' required conduct).

One charged with a fiduciary duty "must either knowingly undertake to act on behalf and

for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (Cal. 2008) (quoting Comm. On Children's Tel., Inc. v. Gen. Foods Corp., 35 Cal 3d 197, 21 (Cal. 1983).

Plaintiff argues first that he and defendants were business partners and, therefore, defendants owed him a fiduciary duty. See Cal. Corp. Code § 16404. "The burden of proving the existence of a partnership lies upon the party asserting its existence." Mercado v. Hoefler, 190 Cal. App. 2d 12, 16 (1961). To support his claim that he and defendants were partners, plaintiff relies on the fact that he obtained a license from the Bureau of Alcohol and Firearms for the winery. But the mere fact that plaintiff obtained a license for the winery does not establish a business partnership or that defendants "knowingly" undertook to act on plaintiff's behalf. Even assuming that this single fact was sufficient to establish a partnership, plaintiff admits that the partnership ended in 1986-87 when Brian came to own the property at issue and to possess the license itself, many years before the sale to Gold Mountain Winery occurred.

Plaintiff next argues the existence of an agency relationship based on the fact that Brian acted as plaintiff's agent in the purchase of land in 1981. "An agent is a fiduciary with respect to matters within the scope of his agency." Rest. 2d Agency, § 13. Therefore, the agent is required "to act primarily for the benefit of another in matters connected with his undertaking" and has "the duty [to his principal] to account for profits arising out of the employment, the duty not to act as, or on account of, an adverse party without the principal's consent, the duty not to compete with the principal on his own account or for another in matters relating to the subject matter of the agency, and the duty to deal fairly with the principal in all transactions between them." Rest. 2d Agency, § 13, com. a, 58; see also Cross v. Bonded Adjustment Bureau, 48 Cal. App. 4th 266, 277 (1996). Assuming for the purposes of this discussion that Brian knowingly undertook to act on plaintiff's behalf in that transaction, it is unclear how Brian's later act of selling the property that he came to own in 1987 violated Brian's fiduciary duty to plaintiff.

The analysis of plaintiff's claim is made difficult by plaintiff's vague and conclusory allegations. For example, precisely how did the defendants breach their fiduciary duty to plaintiff? Was it through the sale of the winery without first consulting with plaintiff? Is it

10

through their continued refusal to compensate plaintiff for his investments and/or loans? For these reasons, plaintiff's claim of breach of fiduciary duty as to Brian fails. Moreover, because there are no specific allegations as to Dianne Fitzpatrick, this claim will be dismissed as to her, as well. Plaintiff will, however, be granted leave to amend this claim.

b. Confidential Relationship

Breach of a confidential relationship is established when: (1) one party is vulnerable to the other; (2) this vulnerability results in the empowerment of the stronger party; (3) empowerment has been solicited or accepted by the stronger party; and (4) prevents the weaker party from effectively protecting itself. Richelle L., 106 Cal. App. 4th at 272. As to this claim, plaintiff argues that he "allow[ed] [the defendants] to exercise control over his assets." FAC 20. Without more, however, this fails to establish a confidential relationship.

3. Breach of Implied Contract

Plaintiff also asserts a claim for breach of an implied contract and states that "there is ample evidence which supports the intention of the parties to create a binding contract." FAC 22-23. Defendants contend that plaintiff has not established a contract because he "has failed to allege even the essential elements of a contract." MTD 5.

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. Oasis West Realty LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). California law establishes that a contract may be either express or implied. Cal. Civ. Code § 1619. An express contract states its terms in words, id. § 1620, while an implied contract exists because of conduct, id. § 1621. Additionally, California law recognizes two subsets of implied contracts: contracts implied in law where "the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice," Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1419 (1996), and contracts implied in fact where the parties' actions demonstrate an intention to create a binding contract, Weitzenkorn v. Lesser, 40 Cal. 2d 778, 794 (1953).

Plaintiff here has sufficiently alleged that the parties entered into an implied contract: he

11

claims that "numerous promises [were] made over the years by Defendants Brian and Dianne Fitzpatrick that all of his investments and loans would be treated properly and in accordance with applicable standards of accounting and business ethics." FAC 14. "Plaintiff asserts that the promises [were] made by the Defendants" during the time period when plaintiff was investing and/or loaning money, and plaintiff states that "absent these promises," he would not have invested and/or loaned money. Id. Plaintiff then claims that defendants have not performed under the contract by refusing to reimburse plaintiff, and that he has suffered as a result. Accordingly, plaintiff's breach of contract claim is not subject to dismissal.

### 4. Breach of Implied Covenant of Good Faith and Fair Dealing

With his breach of contract claim, plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing. Defendants contend that the implied covenant merely assures compliance with the express terms of a contract, a contract which plaintiff has not properly alleged or established.

Every contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract. Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 720 (2007); Kransco v. American Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000). The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises. Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 373-74 (1992); Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990). The scope of conduct prohibited by the implied covenant depends on the purposes and express terms of the contract. Carma Developers, 2 Cal. 4th at 373. Although breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract. Careau, 222 Cal. App. 3d 1393-94.

Defendants argue that this claim necessarily fails because plaintiff has not established the elements of a contract. The undersigned, however, found that plaintiff adequately pled the elements of a breach of contract claim. Therefore, defendants' motion for dismissal on this ground will be denied.

B. <u>Plaintiff's Motion for Leave to File Supplemental Pleading</u>

In his August 2, 2013 motion for leave to file a supplemental pleading, plaintiff seeks leave to file a second amended complaint because he has recently come into possession of certain additional evidence that he contends would clarify his claims. Good cause appearing, this request will be granted. In so granting, the court takes note of two claims re-asserted in the first amended complaint that were found to be subject to dismissal as a matter of law upon consideration of defendants' motion to dismiss the original complaint. <u>See</u> ECF No. 23 at 8 (constructive trust and theft by deception). Plaintiff is hereby informed that the inclusion of these claims in a second amended complaint may result in the issuance of findings and recommendations recommending that they be dismissed with prejudice.

CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' June 13, 2013 motion to dismiss (ECF No. 32) is granted in part;
2. Plaintiff's August 2, 2013 motion for leave to file a supplemental pleading (ECF No. 41) is granted;
3. The first amended complaint is dismissed; and
4. Plaintiff shall file a second amended complaint within thirty days from the date of this order. Because this will be plaintiff's final opportunity to amend his complaint, he is directed to include all allegations in a single pleading since piecemeal pleadings will not be accepted.

DATED: August 29, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;fitz2938.mtd2

13