UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FITZPATRICK,<br><br>          Plaintiff,<br><br>     v.<br><br>BRIAN FITZPATRICK, ET AL.,<br><br>          Defendants. | No. 2:12-cv-2938 GEB AC PS<br><br><br><br>FINDINGS & RECOMMENDATIONS |

Pending before the court is defendants' motion to dismiss plaintiff's Second Amended Complaint ("SAC"). Plaintiff opposes the motion. On review of the motion, the briefs filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL BACKGROUND

A.    Allegations in Second Amended Complaint

Plaintiff, Michael Fitzpatrick, brings this diversity action against his brother, Brian Fitzpatrick, and his brother's wife, Dianne Fitzpatrick, for claims related to the purchase, development, and eventual sale of a family winery, the Fitzpatrick Winery and Lodge ("the FWL"), located in El Dorado County, California.

At issue in this case is defendants' failure to repay plaintiff for his investments in the FWL. As best as the Court can determine, these investments are outlined here:

1

- Between 1978 and 1985, plaintiff invested approximately $101,000 in the FWL. SAC ¶ 16.

- In 1981, plaintiff purchased 40 acres of property in El Dorado County ("the property" or "the El Dorado County property") for the development of the FWL, and he remained the sole owner of this parcel until 1987. SAC ¶ 5. This parcel was purchased by Brian Fitzpatrick, acting as an agent for plaintiff, in the amount of $132,000, with a $25,000.00 down payment and monthly payments ranging from $1070.00 to $1357.83. See SAC, Ex. E (ECF No. 48 at 50). At various times, plaintiff deeded and/or temporarily transferred portions of this property to the defendants and to plaintiff's parents for financial purposes. SAC ¶ 5. These transfers were without consideration. Id.

- Between 1984 and 1987, plaintiff invested an additional $150,000 to improve the property for the development of the FWL. SAC ¶¶ 6, 16.

- In 1985, plaintiff sent a container of antique Irish pine furniture from Ireland for furnishing the lodge. SAC ¶ 16.

- In 1987, when the construction of the FWL was completed, plaintiff contributed the El Dorado County property to the Fitzpatrick Winery partnership at its fair market value as a portion of his capital contribution. SAC ¶ 18.

- In 1999, plaintiff loaned an antique original pew from Saint Patrick's Cathedral in New York City to be displayed in the FWL. SAC ¶ 16.

Funding for the FWL that was provided by plaintiff was funneled through a partnership called the Fitzpatrick Winery. SAC ¶ 7. The predecessor of the Fitzpatrick Winery, the FBF Winery, was established in 1978 by plaintiff, Brian Fitzpatrick, and a third individual. Id. The FBF Winery was later renamed the Fitzpatrick Winery in light of the substantial investments made by plaintiff. Id. A second partnership, the Hill Winery Partnership, was also established for the acquisition and development of the FWL property. Id. ¶¶ 31-32. While this partnership did not generate income, its investments were to be capitalized by the plaintiff. Id. By 1987, plaintiff's approximate ownership interest in the Hill Winery Partnership was valued at

2

$250,000.00.  Id. ¶ 33.  Brian Fitzpatrick controlled the bank accounts for these entities.  Id. ¶ 8.

In addition to these investments and partnerships, Brian Fitzpatrick operated as an officer / agent for a legal entity, California Connection Corporation ("CCC"), established and owned by plaintiff for the purpose of advancing the FWL.  SAC ¶ 7.  Brian Fitzpatrick exercised full control over the CCC bank account and exercised his own discretion in making use of plaintiff's funds.  Id.  Plaintiff was the party licensed and bonded by the Bureau of Alcohol, Tobacco and Firearms for both the FBF Winery and the FWL up through 1986, when defendants assumed both the bond and license in connection with the FWL.  Id. ¶ 38.  Plaintiff stopped making financial contributions to the winery in 1986.  SAC ¶ 21.

Plaintiff claims he made these investments and entrusted Brian Fitzpatrick with his finances in reliance upon oral promises, an implied contract, and various written letters indicating that plaintiff would be repaid for his investments and that he would cash in on the appreciation of the FWL in the event of a sale.  SAC ¶ 16.  For example, in 1987, plaintiff received a letter from the defendants seeking to purchase the El Dorado County property from plaintiff and assuring him that, "As a co-landlord you would not be responsible for any activities associated with operating the lodge business.  You'll enjoy monthly income and eventually cash in on the appreciation of this asset (lodge) when we or our children . . . decide to sell, lease or whatever."  Id.  Plaintiff rejected this offer.  Id. ¶ 18.

Following the completion of the FWL in 1987, plaintiff did not make a demand for payment or attempt to capitalize on his interest at that time out of concern for his brother's financial difficulties, to avoid a family dispute, and because defendants assured him that he would receive payment on sale of the FWL.  SAC at 2, ¶ 9; see also id. ¶¶ 16, 24.  Plaintiff thus believed that he could not "cash-in" until the property was liquidated.  SAC ¶ 24.

In late-2011, plaintiff became aware through his mother that the defendants were planning to sell the FWL to Gold Mountain Winery, Inc., without first informing plaintiff.  SAC at 9.  Brian Fitzpatrick promised his and plaintiff's mother that if she did not tell plaintiff about the pending sale, he would settle with plaintiff for his large investment after the sale went through.  SAC ¶¶ 10-11.

3

The sale to Gold Mountain Winery, Inc., has now been accomplished, and plaintiff has not received any proceeds from the sale.

B.   Defendants' Request for Judicial Notice

With their motion to dismiss, defendants have submitted for judicial notice the following documents that were filed in the County Recorder's Office in El Dorado County, California: (1) a grant deed of 40 acres from Sue Hicks to Michael Fitzpatrick and Brian Fitzpatrick, recorded May 15, 1981; (2) a grant deed of 15 acres from Brian Fitzpatrick to Michael Fitzpatrick, recorded September 1, 1981; (3) a grant deed of 24.37 acres from Michael Fitzpatrick to Brian Fitzpatrick, recorded November 1, 1981; (4) a warranty deed of the 15 acres from Michael Fitzpatrick and Mary Burke to CCC, recorded November 14, 1988; (5) a warranty deed of the 15 acres from CCC to Joseph Fitzpatrick and Eileen Fitzpatrick, recorded November 14, 1988; (6) a grant deed of five acres from Joseph Fitzpatrick and Eileen Fitzpatrick to Brian Fitzpatrick, recorded March 15, 1996; (7) a record of survey, filed March 15, 1996; (8) a grant deed of 10 acres from Joseph Fitzpatrick and Eileen Fitzpatrick to William Schuyler, recorded Nov3ember 28, 2000; (9) a grant deed of 30 acres from Brian Fitzpatrick to the Brian Fitzpatrick and Dianne Fitzpatrick Family Trust, recorded August 18, 2005; (10) a deed of trust in favor of Sacramento Valley Farm Credit executed by Brian Fitzpatrick, recorded July 28, 2003; (11) a grant deed of thirty acres from the Fitzpatrick Family Trust to Gold Mountain Winery, Inc., recorded October 28, 2011; and (12) a grant deed of 10 acres from William Schuyler to Gold Mountain Winery, Inc,, recorded October 28, 2011.  Request for Judicial Notice ("RJN"), Exs. 1-12.  Defendants also seek judicial notice of plaintiff's opposition to defendants' motion to dismiss plaintiff's first amended complaint.  RJN, Ex. 13.

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  "A court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  The court may take judicial notice of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645

4

F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).  "Judicial notice is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as a substitute for the conventional method of taking evidence to establish facts."  York v. American Tel. & Tel. Co., 95 F.3d 948, 958 (10th Cir. 1996) (internal quotations omitted); see General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997).

Other than the last document, of which a formal request is unnecessary since it is a part of the Court's own docket in this matter, plaintiff's request for judicial notice is granted.  These judicially noticed documents establish the following facts in this case:

On May 15, 1981, Sue Hicks granted to plaintiff and Brian Fitzpatrick each an undivided one-half interest, as tenants in common, of certain property located in El Dorado County.  RJN, Ex. 1.  On August 31, 1981, the brothers gift deeded 15 acres of the property to plaintiff and 24.37 acres of the property to Brian Fitzpatrick.[1]  Id., Exs. 2-3.

On October 28, 1988, plaintiff and his wife transferred the 15 acres held in plaintiff's name to CCC.  RJN, Ex. 4.  On the same day, CCC transferred the same 15 acres to the brothers' parents, Joseph and Eileen Fitzpatrick.  Id., Ex. 5.

On March 15, 1996, Joseph and Eileen Fitzpatrick deeded 5 of their 15 acres to Brian Fitzpatrick.  RJN, Ex. 6.  Per the Record of Survey filed the same date, Brian Fitzpatrick came to own 29.37 acres, and Joseph and Eileen Fitzpatrick owned the remaining 10 acres.  Id., Ex. 7.

Joseph and Eileen Fitzpatrick deeded their remaining 10 acres to William H. Schuyler on November 21, 2000.  RJN, Ex. 8.  William Schuyler held this parcel until November 15, 2011, when he conveyed it to Gold Mountain Winery, Inc.  Id. Ex. 12.

As for Brian Fitzpatrick's 29.37 acres, he refinanced the loan secured against the property in July 2003.  RJN, Ex. 10.  He thereafter conveyed this property to his family trust, the Brian Fitzpatrick and Dianne Fitzpatrick Family Trust, on August 18, 2005.  Id. Ex. 9.  On October 28, 2011, this property was conveyed by the family trust to Gold Mountain Winery, Inc.  Id. Ex. 11.

---

[1] Though not entirely clear, it appears that this land is the same as those 40 acres that plaintiff claims he purchased in 1981 and possessed as a sole owner until 1987.  See, e.g., SAC ¶ 5, Ex. B.  Per plaintiff, the transfers to his brother and parents were intended solely for financial purposes.  Id. ¶ 5.

5

PROCEDURAL HISTORY

A.   The Original Complaint

On December 5, 2012, plaintiff filed a complaint against defendants Brian and Dianne Fitzpatrick and Gold Mountain Winery alleging breach of an implied contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud, theft by deception, constructive trust, unjust enrichment, and conspiracy to defraud. Plaintiff sought accounting and recovery of his loans and investments in the property. On May 7, 2013, this pleading was dismissed with leave to amend for lack of specificity. ECF No. 23.

B.   The First Amended Complaint

Plaintiff filed an amended complaint on May 28, 2013, and a modified first amended complaint on June 4, 2013,[2] asserting these claims: fraud, conspiracy, breach of fiduciary duty, constructive trust, theft by deception, breach of implied contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment.

On June 5, 2013, Gold Mountain Winery filed a motion to dismiss for failure to state a claim. Subsequently, on request of the plaintiff, the Court dismissed Gold Mountain Winery with prejudice and accordingly denied its motion as moot.

On June 13, 2013, Brian and Dianne Fitzpatrick filed a motion to dismiss for failure to state a claim, or, alternatively, for a more definite statement. In response, plaintiff filed a motion for leave to file a supplemental pleading. On August 29, 2013, the first amended complaint was dismissed for lack of specificity, and plaintiff's motion for leave to amend was granted.

C.   The Second Amended Complaint

This matter is now proceeding on plaintiff's second amended complaint, filed September 26, 2013, in which plaintiff asserts the following claims: fraud, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, resulting trust, and unjust enrichment. Defendants filed the instant motion to dismiss on October 16, 2013. Plaintiff opposes the motion.

---

[2] A second copy of the first amended complaint was filed to include a page that was omitted from the first filing. The pleadings are otherwise identical.

6

LEGAL STANDARDS

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007) (quoting Federal Rule of Civil Procedure 8(a)(2)). A motion to dismiss tests the sufficiency of a complaint or counterclaim, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. Ashcroft v. Iqbal, 556 U.S. 662 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Under Twombly, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 556–57) (internal

quotation marks omitted). In sum, if the facts alleged raise a reasonable inference of liability—stronger than a mere possibility—the claim survives; if they do not, the claim should be dismissed. See Iqbal, 129 S. Ct. at 1949-50.

## DISCUSSION

Defendants Brian and Dianne Fitzpatrick move to dismiss the operative pleading on several grounds, including failure to state a claim, untimeliness, and the doctrine of laches.

A.   Failure to State a Claim

   1.   Fraud

As he had done previously, plaintiff asserts a claim for fraud based on "numerous promises made over the years by defendants Brian and Dianne Fitzpatrick that all of his investments would be treated properly and in accordance with standings of accounting and business ethics which pertain to any partnership relationship." Plaintiff asserts that if not for these oral and written promises, he would not have invested money into the purchase of land or the construction of the winery. Defendants seek dismissal of plaintiff's fraud claim for lack of specificity. For the reasons set forth here, the Court will recommend that plaintiff's fraud claim be dismissed.

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all elements of the cause of action." Conrad v. Bank of America, 45 Cal. App. 4th 133, 156 (1996). See also Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (setting forth the elements of a fraud claim under California law). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." See Conrad, 45 Cal. App. 4th at 157. The absence of any one of these required elements will preclude recovery." Wilhelm v. Pray, Price, Williams & Russell, 186 Cal. App. 3d 1324, 1332 (1986).

Additionally, Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead with particularity, a requirement which "applies to state-law causes of action." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). See also Roberts v. Ball, Hunt, Hart, Brown &

8

Baerwitz, 57 Cal. App. 3d 104, 109 (1976) (maintaining that "the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made"). Fraud claims stating mere conclusory allegations are not sufficient. Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989). Fraud claims must state "the who, what, when, where, and how" of the misconduct alleged, as well as "what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106. The pleading must identify the circumstances constituting fraud so that defendants might have notice of the particular misconduct alleged, allowing preparation of "an adequate answer from the allegations." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).

Turning to the first element of a fraud claim—misrepresentation—"[a] promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." Lazar, 12 Cal. 4th at 638 (citation omitted). Thus, to sufficiently allege that defendant made a misrepresentation in a promissory fraud action, the complaint must allege that (1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false. Id. at 639.

To sufficiently plead the first requirement, that the defendant made a promise, the complaint must state "facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" Lazar, 12 Cal. 4th at 645 (citation omitted). As for the second requirement, the falsity of that promise is sufficiently pled with a general allegation the promise was made without an intention of performance. See Tyco Industries, Inc. v. Superior Court, 164 Cal. App. 3d 148, 156 (1985). "The representation (implied) is that of the intention to perform. . . .; the truth is the lack of that intention. Purely evidentiary matters—usually circumstantial evidence or admissions showing lack of that intention—should not be pleaded. Hence, the only necessary averment is the general statement that the promise was made without the intention to perform it, or that the defendant did not intend to perform it." 5 Witkin, Cal. Pro. (5th ed. 2008) Pleading § 725, p. 142 (citation omitted).

Here, plaintiff's fraud claim is founded on an allegation that defendants never intended to repay plaintiff for his investments despite oral and written statements to the contrary that were intended to induce plaintiff to invest in the family venture. But the only statement identified by plaintiff in support of this claim is one made by defendants in mid-1987 in a letter in which they offered to purchase the El Dorado County property from plaintiff and, in return, plaintiff would cash in on the appreciation of the FWL when it was sold or leased. See SAC, Ex. B (ECF No. 48 at 36-37). Plaintiff admits, however, that he rejected this offer. SAC ¶ 18 ("Defendant's offer to purchase the land was not accepted by the Plaintiff due to the large financial loss which he would have suffered."). Moreover, plaintiff admits that he made financial contributions to the family venture through 1986, before this letter was sent to plaintiff. As plaintiff has failed to identify any other promises made by defendants with the specificity required for a fraud claim, and because the only statements identified by plaintiff were made by the defendants after plaintiff invested in the family venture, plaintiff's fraud claim must be dismissed.

Plaintiff also claims that defendants "engage[d] in fraud by scheming from the outset to acquire the Fitzpatrick Winery and Lodge without honoring the ownership rights of the Plaintiff." SAC ¶ 14. Again, plaintiff fails to identify any statements or promises with specificity in support of this claim. Because this was plaintiff's third attempt to state a viable fraud claim, the undersigned will recommend that this claim be dismissed without leave to amend.

2.   Breach of Fiduciary Duty

Defendants next seek dismissal of plaintiff's breach of fiduciary duty. Breach of fiduciary duty is established with: (1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) resulting damage. Pellegrini v. Weiss, 165 Cal. App. 4th 515, 524 (2008). Plaintiff alleges breach of this duty based on a fiduciary / partnership relationship and on a confidential relationship.

a.   Fiduciary Relationship

A fiduciary relationship exists when one of the parties has a duty to act with the utmost good faith for the benefit of the other party. Gilman v. Dalby, 176 Cal. App. 4th 606 614 (2009). In California, a partnership is defined as "the association of two or more persons to carry on as

1   coowners a business for profit . . . , whether or not the persons intend to form a partnership." Cal.
2   Corp. Code § 16202.  With regard to the existence of a fiduciary relationship, California law
3   provides that partners owe fiduciary duties to the partnership and to other partners.  See Cal.
4   Corp. Code. § 16404(a).  With regard to the breach of this fiduciary duty, Section 16404(d) of the
5   California Corporations Code provides that "[a] partner shall discharge the duties to the
6   partnership and the other partners . . . and exercise any rights consistently with the obligation of
7   good faith and fair dealing."  Cal. Corp. Code. § 16404(d).  See also Brown v. Wells Fargo Bank,
8   NA, 168 Cal. App. 4th 938, 959-60 (2008) ("[f]iduciary . . . relationships are relationships
9   existing between parties . . . bound to act with the utmost good faith for the benefit of the other.").
10  "Like partners, joint venturers are fiduciaries with a duty of disclosure and liability to account for
11  profits."  Weiner v. Fleischman, 54 Cal. 3d 476, 482 (1991) (en banc) (internal citations omitted).
12  "A joint venture or partnership may be formed orally or assumed to have been organized from a
13  reasonable deduction from the acts and declarations of the parties."  Id.

14       Plaintiff asserts that the existence of two partnerships— the Fitzpatrick Winery and Hill
15  Winery partnerships—support this claim.  In furtherance of these partnerships, defendants
16  knowingly undertook the obligations of a fiduciary by acting as plaintiff's agent during the
17  purchase of the El Dorado County property in 1981 and thereafter in exercising control over
18  plaintiff's financial investments.  Plaintiff, in turn, purchased the El Dorado County property,
19  provided funding for the development of the FWL, and served as the bonded party with the
20  Bureau of Alcohol, Tobacco and Firearms for the State of California until 1986.  In light of these
21  partnerships, in which both plaintiff and the defendants were partners, the latter owed plaintiff a
22  fiduciary duty to correctly and properly account for the funds that plaintiff invested in the FWL.

23       Defendants argue that plaintiff's claim fails because he fails to assert the essential terms of
24  a partnership.  In the absence of any authority hold that a plaintiff must allege the essential terms
25  of a partnership before proceeding with a breach of fiduciary duty claim, this argument fails.  In
26  any event, California Corporation Code Section 16404(b)(1) provides an essential term of all
27  partnership contracts that plaintiff claims was breached here, namely, that a partner's duty of
28  loyalty to the partnership and the other partners includes a duty "[t]o account to the partnership

1  and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and
2  winding up of the partnership business or derived from a use by the partner of partnership
3  property or information . . . ."  Defendants next argue that, once plaintiff was removed from the
4  title to the El Dorado County property in 1988, he no longer had any interest in either parcel.
5  This argument, however, is more properly asserted in a motion for summary judgment, not at this
6  initial pleading stage.  The Court thus finds that plaintiff has adequately asserted the elements of
7  this claim.

        b.        Confidential Relationship

9        In the alternative, plaintiff asserts the breach of a confidential relationship that existed
10  between him and the defendants.  Breach of a confidential relationship is established when: (1)
11  one party is vulnerable to the other;  (2) this vulnerability results in the empowerment of the
12  stronger party; (3) empowerment has been solicited or accepted by the stronger party; and (4)
13  prevents the weaker party from effectively protecting itself.  Richelle L. v. Roman Catholic
14  Archbishop, 106 Cal. App. 4th 257, 272 (2003).  Plaintiff asserts that a confidential relationship
15  existed as evidenced by his vulnerability once the defendants took over control of the FWL.  This
16  language, though, mirrors that which was rejected by the undersigned on consideration of
17  defendants' motion to dismiss the first amended complaint.  ECF No. 46.  Thus, the undersigned
18  will recommend that this claim be dismissed without leave to amend.

19        3.        Breach of Implied Covenant of Good Faith and Fair Dealing

20        Lastly, defendants argue that plaintiff's breach of the implied covenant of good faith and
21  fair dealing claim should be dismissed as superfluous because plaintiff has not made any
22  allegations that go beyond a breach of contract claim.
23        Every contract contains an implied covenant of good faith and fair dealing providing that
24  no party to the contract will do anything that would deprive another party of the benefits of the
25  contract.  Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 720 (2007); Kransco v. American
26  Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000).  The implied covenant protects the
27  reasonable expectations of the contracting parties based on their mutual promises.  Carma
28  Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 373-74 (1992);

1  Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990).  The
2  scope of conduct prohibited by the implied covenant depends on the purposes and express terms
3  of the contract.  Carma Developers, 2 Cal. 4th at p. 373.  Although breach of the implied covenant
4  often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of
5  contract.  Careau, 222 Cal. App. 3d at 1393-94.
6        Considering the allegations asserted in the SAC as to both this claim and the breach of
7  contract claim, the Court finds that the gravamen of the two counts differs.  The gravamen of the
8  breach of contract claim is that defendants failed to comply with their contractual obligation to
9  repay plaintiff for his investments, while the gravamen of the count of breach of the implied
10 covenant of good faith and fair dealing is defendants' alleged efforts to hide the sale of the FWL
11 from plaintiff.  As these two claims are sufficiently different from each other, dismissal is not
12 warranted.
13 B.     Statute of Limitations
14       Defendants next seek dismissal of all of plaintiff's claims as barred by the statute of
15 limitations.  A statute of limitations "prescribes the period[ ] beyond which an action may not be
16 brought."  See generally 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 430, p. 546.  "The
17 statute of limitations usually commences when a cause of action 'accrues,' and it is generally said
18 that 'an action accrues on the date of injury.'  Alternatively, it is often stated that the statute
19 commences 'upon the occurrence of the last element essential to the cause of action.'"  Bernson
20 v. Browning–Ferris Indus., 7 Cal. 4th 926, 931 (1994) (internal citations omitted).  "These
21 general principles have been significantly modified by the common law 'discovery rule,' which
22 provides that the accrual date may be 'delayed until the plaintiff is aware of her injury and its . . .
23 cause.'"  Id.  Now, under the discovery rule, "'the statute of limitations begins to run when the
24 plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has
25 done something wrong to her.'"  Id. at 932.
26       The statute of limitations for plaintiff's various causes of action are as follows: (1) fraud,
27 3 years (Cal. Civ. Proc. § 338(d)); (2) breach of implied contract, 2 years (Cal. Civ. Proc. §
28 339(1)); (3) breach of fiduciary duty, 4 years (Cal. Civ. Proc. § 353); (4) breach of implied

13

covenant of good faith and fair dealing, 2 years (Cal. Civ. Proc. § 339(1)); (5) resulting trust, 4 years (Cal. Civ. Proc. §343), and (6) unjust enrichment, 2 years (Cal. Civ. Proc. § 339).

Defendants argue that plaintiff's claims are barred because he unreasonably delayed in making a demand for payment. In California, "[i]t is established law that one whose right of action is dependent upon his making a demand cannot postpone the running of the statute of limitation by failing for an unreasonable period to thus assert his right, and unless the demand is made within such period the cause of action is barred." Phillis v. City of Santa Barbara, 229 Cal. App. 2d 45, 55 (1964). On the other hand, "several California cases indicate that Appellants' cause of action accrued not when a demand could have been made but when a demand was made." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 999 (9th Cir. 2006) (citing cases). "[T]he linch-pin of the demand requirement is that the demand must be made within a reasonable time after it can lawfully be made." Id. (internal quotations omitted).

According to defendants, plaintiff's right to demand arose when they allegedly failed to comply with contractual obligations that required them to "periodically account and, by inference, make payment" to plaintiff. Defs.' Mot. Dismiss at 11. But plaintiff's claims here are not premised on defendants' duty to provide periodic accounting, but instead on defendants' promises that plaintiff's investments in the FWL would be apportioned properly when the FWL was sold. For each of plaintiff's surviving causes of action, plaintiff's injury occurred when the defendants sold the FWL to Gold Mountain Winery, Inc. in late-2011 and did not make payment to plaintiff. Plaintiff initiated this action on December 5, 2012, well within the statute of limitations as to all claims.

Even assuming a demand could have been made earlier, plaintiff argues that equitable estoppel should prevent a finding of untimeliness. Generally, equitable estoppel "addresses the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." Lantzy v. Centex Homes, 31 Cal. 4th 363, 383 (2003) (internal quotations omitted).

14

> One aspect of equitable estoppel is codified in Evidence Code section 623, which provides that "[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." But an estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. To create an equitable estoppel, it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss. Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense."

Lantzy, 31 Cal. 4th at 383 (internal citations and quotations omitted).

Here, plaintiff argues that any delay in making a demand was based on defendants' requests for a delay and on their assurances that payment would be made on sale of the FWL. See, e.g., SAC ¶ 12 ("Although Plaintiff never made a demand Defendants knew well that Plaintiff expected to be paid the value of his interest in the property if it were ever disposed"), ¶ 24 ("Plaintiff at all times relied upon these promises of protection of his ownership interest in [FWL] which were renewed from time to time by the Defendants . . . . Plaintiff never made a demand because he knew that, as promised by the Defendants, he could not 'cash in' until the property was liquidated in one way or another."); see also Pl.'s Opp'n at 2 ¶ 5 ("Plaintiff, upon written and verbal requests from the Defendants, agreed to wait until liquidation of the assets or a lease which would generate positive cash flow to make a claim for his equity share."). Because plaintiff has pled facts indicating that defendants' conduct directly prevented him from making a demand earlier, defendants' motion to dismiss on this ground should be denied.

C. Doctrine of Laches

Lastly, defendants argue that plaintiff's claims for an accounting, quantum meruit, and a resulting trust are barred by laches. "Laches is an equitable defense." Rouse v. Underwood, 242 Cal. App. 2d 316, 323 (1966). "'The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.'" Johnson v. City of Loma Linda, 24 Cal. 4th 61, 68 (2000); Conti v. Board of Civil Service Commissioners, 1 Cal. 3d 351, 359 (1969). Laches does not apply in an action of law. Barkley v. City of Blue Lake, 47 Cal. App. 4th 309, 315 (1996).

"'Generally speaking, the existence of laches is a question of fact to be determined by the trial court in light of all the applicable circumstances. . . .'" City of Coachella v. Riverside County Airport Land Use Com., 210 Cal. App. 3d 1277, 1286 (1989). However, the issue may be addressed as one of law if the facts are undisputed. San Bernardino Valley Audubon Society v. City of Moreno Valley, 44 Cal. App. 4th 593, 607 (1996), overruled on other ground, San Bernardino Valley Audubon Society v. Metropolitan Water Dist., 71 Cal. App. 4th 382, 402-03 (1999).

Defendants seek dismissal on the ground that, due to plaintiff's allegedly unreasonable delay in demanding repayment for his investments, they would be substantially prejudiced by the excessive passage of time since they built, ran and sold a successful business without any input from plaintiff since 1987. Although the defense of laches can be raised by a motion to dismiss where the laches is apparent upon the face of the complaint, see King v. Los Angeles Co. Fair Ass'n, 70 Cal. App. 2d 592, 596 (1945), the Court finds this matter not subject to resolution at this stage because factual disputes exist regarding the reasonableness of plaintiff's delay and the prejudice to defendants.[3] See Sefton v. Sefton, 206 Cal. App. 4th 875, 895 (2012).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 49) be granted in part;
2. Plaintiff's fraud claim be dismissed without leave to amend;
3. Plaintiff's breach of fiduciary duty based on a confidential relationship be dismissed without leave to amend; and
4. This matter proceed on plaintiff's remaining claims (breach of implied contract, breach of fiduciary duty based on a fiduciary / partnership relationship, breach of implied covenant of good faith and fair dealing, resulting trust, and unjust enrichment).

---

[3] Alternatively, the problem with defendants' argument is that plaintiff asserts in the SAC that he complied with defendants' requests for a delay in demand and relied on assurances that he would be repaid when the FWL was sold. Thus, the delay was principally due to defendants' alleged false assurances rather than plaintiff's neglect. Additionally, other than a bare, generalized assertion of prejudice, defendants have not in fact shown any prejudice.

16

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.   The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 23, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE